UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Melanie Vosdingh, Andrea Fannan,
and Holly Nicholls,

        Plaintiffs,

v.

Qwest Dex, Inc., Qwest Corporation,
and Dex Media East LLC,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 03-4284 ADM/AJB

---

Bruce C. Recher, Esq., and Richelle Wahi Reiff, Esq., Henson & Efron, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiffs.

Elizabeth I. Kiovsky, Esq., Baird & Kiovsky, LLC, Denver, CO, and Melissa Raphan, Esq., Dorsey & Whitney LLP, Minneapolis, MN, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

In an April 21, 2005 Order [Docket No. 99], this Court granted, <u>inter alia</u>, Qwest Dex, Inc., Qwest Corporation, and Dex Media East LLC's (collectively, "Qwest Dex" or "Defendants") Motion for Summary Judgment [Docket No. 40] on Holly Nicholls' ("Nicholls" or "Plaintiff") claim under the Pregnancy Discrimination Act ("PDA"). Subsequently, the Court granted Plaintiff's request to reconsider the narrow issue of Plaintiff' PDA claim to the extent it relates to her second pregnancy [Docket No. 101]. The lengthy April 21, 2005 Order addressed many complex legal issues and Nicholls' PDA claim stemming from her second pregnancy was not the focus of the Order. For the reasons set forth below, Nicholls has presented sufficient evidence to survive summary judgment on her pregnancy discrimination claim. The remainder of the rulings in the April 21, 2005 Order stand unaffected.

## II.  DISCUSSION[1]

The standard for reversing a decision on a motion to reconsider is unclear and was the subject of some briefing in this case.  Since this Court owes no deference to itself and knows it makes mistakes, motions to reconsider will be granted and a change made when convinced an error has been made, manifest or not.

In the absence of sufficient direct evidence of discrimination, Title VII disparate treatment claims are analyzed under the burden shifting analysis established in McDonnell Douglas.  See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-36 (8th Cir. 1999).  The PDA amended Title VII's prohibition on sex discrimination to include discrimination on the basis of:

> pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k).  Under the McDonnell Douglas framework, the plaintiff employee must initially establish a prima facie case of discrimination.  This showing creates a presumption that the employer acted unlawfully.  See Kiel, 169 F.3d at 1134-35 (applying framework to Title VII claim).  The burden of production then shifts to the employer who must provide legitimate, non-discriminatory reasons for the adverse employment action.  Id.  If the defendant meets this requirement, the burden returns to the plaintiff to show that the employer's explanation is pretextual.  Id.

---

[1] The pertinent facts are set forth in the April 21, 2005 Order and are incorporated by reference here.

To demonstrate a prima facie case of disparate treatment on the basis of pregnancy, a plaintiff must prove: (1) she belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) non-members of her class were treated differently. See Bredding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999). The fourth element of a discrimination claim has been described as requiring some "evidence that would give rise to an inference of unlawful discrimination." Putnam Search Term End v. Unity Health Sys., 348 F.3d 732, 735-36 (8th Cir. 2003).

Plaintiff meets the requirements for establishing a prima facie case of pregnancy discrimination. It is undisputed Nicholls was pregnant at the time she was demoted from the premise position. Nicholls Dep. (Recher Aff. [Docket No. 55] Ex. I) at 32-34. Furthermore, as discussed in the April 21, 2005 Order, Nicholls was qualified to perform her job and her demotion constituted an adverse employment action. Order at 16-17, 34-35. Finally, Nicholls argues non-members of her class were treated differently. Plaintiff presented evidence that, despite the sales performance evaluation ("SPE") system's stated goal that a "case management call will insure consistency across all universes," males and non-pregnant female sales consultants were frequently given extra chances after receiving four unsatisfactory ratings to correct their performances. See SPE System (Recher Aff. [Docket No. 57] Ex. 75) at 28; Ex. 131 (Recher Aff. [Docket No. 60]); Roberts Dep. (Recher Aff. [Docket No. 50] Ex. B) at 105-17; Cocchiarella Dep. (Recher Aff. [Docket No. 50] Ex. C) at 187-93 (12 instances of males being allowed an additional quarter after receiving four unsatisfactory ratings). Nicholls claims Defendants, in reaching the decision to demote her, discounted evidence that her SPE scores were trending upwards, she was close to achieving a satisfactory rating and she had a positive

attitude. Cocchiarella Dep. at 172-73; Ex. 94 (Recher Aff. [Docket No. 58]). Nicholls further presents evidence suggesting Defendants did consider such factors when evaluating whether to terminate a non-pregnant female employee with four consecutive quarters of unsatisfactory performance scores. Davidson Dep. (Recher Aff. [Docket Nos. 52, 53] Ex. D) at 106-09; Ex. 131 (Recher Aff. [Docket No. 60]) at 2208; Ex. 128 (Recher Aff. [Docket No. 60]); Ex. 94. This evidence, when viewed in the light most favorable to Plaintiff, is sufficient to give rise to an inference of unlawful discrimination.

Having established a prima facie case of pregnancy discrimination, the burden shifts to Qwest Dex to establish a legitimate, non-discriminatory reason for Nicholls' demotion. Qwest Dex argues Nicholls was demoted because of sustained poor performance. Defendants' Minneapolis office maintained a longstanding policy to terminate any premise sales consultant whose overall SPE was not within 25% of the universe median. Nicholls was demoted only after four quarters of unsatisfactory SPE scores. Cocchiarella Dep. 180; April 30, 2002 Meeting Notes (Recher Aff. [Docket No. 59] Ex. 112). Nicholls also received two quarters of unsatisfactory SPE scores before taking her first CNC leave. Scott Dep. (Recher Aff. [Docket No. 54] Ex. G) at 140-41, 154-55; 9/25/99 Review (Kiovsky Aff. [Docket No. 42] Ex. F-158); 12/32/99 Annual Review (Recher Aff. [Docket No. 58] Ex. 99). The decision to demote Nicholls occurred following a case management meeting to assess her performance. Rather than terminate Nicholls, as was Qwest Dex's normal practice given her SPE scores, Defendants offered her the telephone sales consultant position, a position in which she was previously successful. Cocchiarella Dep. at 176. These circumstances establish a legitimate, non-discriminatory reason for Nicholls' demotion.

The burden shifts back to Nicholls to demonstrate Qwest Dex's proffered non-discriminatory reason is pretextual. In a February 2002 case management conference, management representatives noted Nicholls was making "good strides" and had a good attitude. 2/5/02 Meeting Notes (Recher Aff. [Docket No. 61] Ex. 147). In March 2002, Nicholls informed her manager, Mary Cocchiarella, that she was pregnant with her second child. Nicholls Dep. at 32-34. Cocchiarella responded by asking "what are you going to do about your job?" Id. She also stated "[i]t's hard to come back after having a child" and "it's hard to do this job with two kids, look what happened to Andrea."[2] Id. In April 2002, after Nicholls received a fourth unsatisfactory SPE rating, Defendants convened a case management meeting to discuss her performance. At the meeting, Nicholls' pregnancy was discussed as well as the fact she would be taking another leave of absence. Cochiarella Dep. at 167-68; Davidson Dep. at 140-41. On April 30, 2002, Nicholls was given 24 hours to decide between a demotion or termination. Cocchiarella Dep. at 180; Nicholls Dep. at 155; April 30, 2002 Meeting Notes (Recher Aff. [Docket No. 59] Ex. 112). After Nicholls was fired, Coccharella told a union representative Nicholls hit a "bump in the road when she took her [first] maternity leave." Nicholls Dep. at 154-55; Stanton Aff. [Docket No. 48] ¶ 13.

The mere temporal proximity between Nicholls informing Cocchiarella that she was pregnant and her demotion the following month, standing alone, may not be sufficient to demonstrate pretext. See Sura v. Stearns Bank, N.A., 2002 U.S. Dist. LEXIS 25376, *16 (D. Minn. Dec. 18, 2002). However, a reasonable factfinder could infer Cocchiarella's

---

[2] The Andrea reference is to former Plaintiff Andrea Fannan, a St. Paul sales consultant who left Defendants' employment after receiving several unsatisfactory ratings. Fannan had taken six months of maternity leave. Fannan Leave Application (Kiovsky Aff. Ex. F-66).

comments may demonstrate Defendants' propensity to equate the taking of pregnancy/maternity leave with diminished sales performance.  See Walsh v. Nat'l Computer Sys., Inc., 332 F.3d 1150, 1160 (8th Cir. 2003); Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 435-36 (8th Cir. 1998).  Furthermore, there is some evidence Defendants may have considered Nicholls' pregnancy and impending leave when considering whether to demote her.  Cochiarella Dep. at 167-68; Davidson Dep. at 140-41.  Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find Nicholls' second pregnancy was a motivating factor in Qwest Dex's decision to demote her.  See 42 U.S.C. § 2000(e)-2; Deneen, 132 F.3d at 435-36.  For the aforementioned reasons, Nicholls' pregnancy discrimination claim, to the extent it is based on her second pregnancy, survives summary judgment

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the portion of this Court's April 21, 2005 Order addressing Nicholls' pregnancy discrimination claim as it relates to her second pregnancy is **VACATED** while the remainder of the Order remains Intact.  Defendant's Motion for Summary Judgment on the Pregnancy Discrimination Claim is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN  D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 2, 2005