UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Melanie Vosdingh and Holly Nicholls,

            Plaintiffs,

    v.

Qwest Dex, Inc., Qwest Corporation,
and Dex Media East LLC,

            Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 03-4284 ADM/AJB

---

Bruce C. Recher, Esq., and Richelle Wahi Reiff, Esq., Henson & Efron, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiffs.

Elizabeth I. Kiovsky, Esq., Baird & Kiovsky, LLC, Denver, CO, and Melissa Raphan, Esq., Dorsey & Whitney LLP, Minneapolis, MN, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Court Judge on Plaintiffs' Melanie Vosdingh ("Vosdingh") and Holly Nicholls' ("Nicholls") (collectively, "Plaintiffs") Motion for An Award of Reasonable Attorneys' Fees [Docket No. 121]. In their Motion, Plaintiffs seek attorneys' fees from Qwest Dex, Inc., Qwest Corporation and Dex Media East LLC's (collectively, "Qwest Dex" or "Defendants") for their efforts in settling claims that Qwest Dex's Sales Performance Evaluation ("SPE") System unfairly penalized female sales consultants who took extended leaves for pregnancy and child care purposes. For the reasons set forth below, Plaintiffs' Motion is granted in part. The Court finds Plaintiffs' counsel are entitled to an award of $395,706.85 in attorneys' fees.

## II. BACKGROUND

Plaintiffs retained Henson & Efron, P.A. ("Henson") to represent them in March 2002 and the present action was commenced in July 2003.[1] Recher Aff. [Docket No 125] ¶ 2. In their Complaint, Plaintiffs asserted a number of claims against Defendants, including: (1) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; (2) violation of the Minnesota Parenting Leave Act ("MPLA"), Minn. Stat. § 181.940, et seq.; (3) sex discrimination under Title VII, 42 U.S.C. § 2000e, et seq.; (4) sex discrimination under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, et seq.; (5) reprisal under Title VII; and (6) reprisal under the MHRA.

On several occasions, the parties engaged in settlement negotiations and mediation. Kiovsky Aff. [Docket No. 132] ¶¶ 4-8. In April 2005, Plaintiff Fannan and Defendants entered into a written settlement agreement resolving Fannan's claims. Id. ¶ 7. As part of Fannan's settlement, Henson received $46,300 in attorneys' fees and reimbursement for costs. Id. At that time, the parties were unable to resolve Vosdingh and Nicholls' claims.

The parties contested several motions. Plaintiffs' Motion to Compel Discovery [Docket No. 12] was granted in part and denied in part. Mar. 15, 2004 Order [Docket No. 23]. Defendants' Motion to Strike the Affidavits and testimony of Dr. Martin [Docket No. 62] was denied. Nov. 8, 2004 Order [Docket No. 70]. The parties filed cross-motions for summary judgment [Docket Nos. 40, 44]. Although Plaintiffs' FMLA claims were dismissed, the remaining MPLA, Title VII and MHRA claims survived summary judgment. Finally, Plaintiffs

---

[1] Andrea Fannan ("Fannan") was also a Plaintiff on the Amended Complaint [Docket No. 7]. Her claims against Defendants were settled in April 2005. As a result of this settlement, Count VII of Plaintiffs' Amended Complaint, which alleged violations of Fannan's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., was resolved.

successfully petitioned the Court to reconsider whether Nicholls' pregnancy discrimination claim should survive [Docket No. 102]. See also June 2, 2005 Order [Docket No. 116].

As the case approached trial, the parties entered into a written settlement agreement dated July 19, 2005. Settlement Agreement (Recher Aff. Ex. 1). Under the terms of the Agreement, Vosdingh received $425,000 and Nicholls received $175,000. Id. at 2  The Agreement also requires Defendants to pay reasonable attorneys' fees, costs and disbursements. Id. at 2-3. It further provides, for the purposes of determining attorneys' fees, costs and disbursements, that Plaintiffs shall be considered prevailing parties pursuant to Title VII, the MHRA and the MPLA. Id.  In the event the parties could not agree upon reasonable fees, costs and disbursements, the Agreement provides that fees will be determined by the District Court. Id.

Thereafter, Defendants agreed to pay Plaintiffs $47,426.54 for costs and disbursements. Kiovsky Aff. ¶ 10. When the parties could not determine reasonable attorneys' fees, Plaintiffs filed the instant Motion. Plaintiffs request an award of $565,295.50. Defendants suggest a reasonable award would be in the range of $262,430.10 to $362,430.10.

### III.  DISCUSSION

Litigants may recover attorneys' fees "if specifically authorized by contract or statute." Van Vickle v. C.W. Scheurer & Sons, Inc., 556 N.W.2d 238, 242 (Minn. Ct. App. 1996); see also Chicago Title Ins. Co. v. F.D.I.C., 172 F.3d 601, 604-05 (8th Cir. 1999). Title VII, the MHRA and the MPLA, as well as the Settlement Agreement, all permit prevailing plaintiffs to receive reasonable attorneys' fees. The amount of reasonable attorneys' fees must be determined on the facts of each case. Hensley v. Eckert, 461 U.S. 424, 429 (1983). The district court has wide discretion in determining the amount of the attorneys' fees award. See id. at 437; see, e.g., Jarrett v. ERC Props, Inc., 211 F.3d 1078, 1084-85 (8th Cir. 2000); Kelsar v. Bartu, 201 F.3d

3

1016, 1017 (8th Cir. 2000).

The starting point for determining the amount of a reasonable fee is to determine the "lodestar," the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley, 461 U.S. at 433. The parties dispute the reasonableness of both the number of hours and rates submitted by Plaintiffs' counsel.

Over three and a half years, four Henson attorneys and one paralegal expended 2757.2 hours on the case. Recher Aff. ¶¶ 8, 18; Billing Records (Recher Aff. Ex. 5). Based on the weighted hourly rates of the attorneys and paralegal, Plaintiffs request $565,295.50 in reasonable attorneys' fees. Id.

The Supreme Court has listed factors which should be weighed to determine whether the requested attorneys' fees are reasonable or should be adjusted downward: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430, n.3 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). It is unnecessary for the Court to explicitly examine all of these factors in determining a reasonable fee amount. Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999) (citations omitted).

According to a June 1, 2004 survey of Minnesota law firms, the hourly rates for the four attorneys and one paralegal who worked on the instant matter for Henson are within the median

4

range of rates common in the Twin Cities. "2004 Minnesota Law Firm Billing Summary" Denarius Human Resources, Inc. (2004) (Recher Aff. Ex. 13) at 17, 21, 33. Although Defendants note that their lead counsel's rate was significantly lower, "Defendants do not object to Plaintiffs' counsels' rates as unreasonable." Defs.' Resp. to Pls.' Mot. for Reasonable Attorneys' Fees ("Defs.' Resp. Brief") [Docket No. 131] at 6. Instead, Defendants contest the reasonableness of the number of hours billed. Defendants claim "significant duplication of attorney time and inefficiency reflected by excessive billing." Id.

In evaluating the reasonableness of the attorneys' fees, the most important factor is the magnitude of Plaintiffs' success in the case as a whole. Hensley, 461 U.S. at 436. First, Plaintiffs obtained an excellent financial result from the settlement. The parties extensively briefed what Plaintiffs believed was a suitable award prior to summary judgment and whether Plaintiffs' counsel engaged in the "relentless pursuit of litigation." See Defs.' Resp. Brief at 10-12; Kiovsky Aff. ¶¶ 4-8; Pls.' Reply Mem. in Supp. of Their Mot. for Reasonable Attorneys' Fees [Docket No. 136] at 2-4; Recher Aff. II [Docket No. 137] ¶¶ 2-9. Notwithstanding this debate, the individual settlements exceed the maximum amount of back pay either Plaintiff could have received and includes compensation for emotional injury. Recher Aff. ¶¶ 32-33; Exs. 11-12.

It is also recognized as significant that Plaintiffs' actions helped change the contested leave practice of Defendants. Following Plaintiffs' repeated complaints, Defendants adopted a "normalization" process whereby sales consultants' parenting leave time is removed from the SPE calculation. Defendants argue the change occurred after Plaintiffs filed their complaint with the Equal Employment Opportunity Commission ("EEOC") and before the instant suit was filed in federal court. See Kiovsky Aff. ¶ 3; Recher Aff. ¶ 7. However, Mark Roberts, the SPE

administrator for Qwest Dex, testified at his deposition that the normalization process was adopted as a result of Plaintiffs' (including Andrea Fannan's) complaints:

> Q. can you tell me what activities you engaged in which contributed to any change in Dex's or Qwest Dex's practice or policy regarding the operation of the SP[E] in reference to leave takers?
>
> A. Okay.  It appears that the leaves – these three plaintiffs brought to this issue, the leaves were – may have had a potential impact on performance in those categories. So we looked at – looked at figuring out a way to modify for that.  And out of that came this – came a process.

Roberts Dep. (Recher Aff. Ex. 6) at 129-30; see also, Ex. 141 (Recher Aff. Ex. 7).  Plaintiffs' repeated complaints about the SPE systems' incorporation of parenting leave led Defendants to subsequently adopted a normalization process.  By pursuing this action, Plaintiffs helped promote the public interest of ensuring the workplace is free from discriminatory practices.  See Shrader v. OMC Aluminum Boat Group, Inc., 128 F.3d 1218, 1222 (8th Cir. 1997).  This change in the Defendants' policy must be considered as a result obtained from the litigation that has value in deciding the fee award.

Furthermore, the issues central to the litigation were complex and time consuming.  At the heart of the instant matter was whether Defendants' SPE system impermissibly penalized employees, particularly women, who took approved maternity/parenting leaves.  The SPE system is intricate, assigning point totals to track performance in seven different categories. Recher Aff. ¶ 12.  The results of these categories were weighted and cumulatively constitute a sales consultant's overall SPE score.  Id.  In order to accommodate short-term market inconsistencies, the system used sales performance data for individual sales consultants generated over a "rolling 24-month" (or eight quarter) period to calculate the individual components that comprise the SPE score.  Id.  The sales consultants' SPE is then compared to a

"universe" of similar employees.  Id.  Understanding and isolating the impact of maternity and parenting leave on a sales consultants' total SPE score is a challenging process.  Further, to demonstrate that Defendants' practices disproportionately penalized female sales consultants, Plaintiffs obtained company-wide information on leave takers.  Id. ¶ 12.  To gather and interpret this data, Plaintiffs were forced to organize the information in a database and obtain expert statistical analysis.  Id. ¶¶ 13-14.

Over 30,000 documents were produced by the parties, including 11,000 pages of SPE reports.  Sixteen depositions were taken and four experts were retained.  Recher Aff. ¶ 4.  The case also involved several complicated factual and legal issues that will not be summarized here.  The complexity and extent of this case suggests the majority of time spent by Plaintiffs' counsel on this matter was reasonable.

Defendants argue that time spent on behalf of former Plaintiff Andrea Fannan should be excluded from the fee award.  Plaintiffs received $46,300 in fees as part of Fannan's April 2004 settlement.  Kiovsky Aff. ¶ 7.  Defendants contend $71,000, or one-third of the fees incurred by Plaintiffs up to the settlement date, should be allocated to Fannan's law suit.  Defs.' Resp. Brief at 19.  Consequently, they argue the difference should be excluded from the fee request.  Id.  The Court acknowledges that Plaintiffs' cases, including Fannan's, shared a common legal theory.  However, there were also factual and legal issues specific to each Plaintiff that preclude simply assigning to Fannan's case a third of the total costs incurred before the settlement date to Fannan.  Plaintiffs acknowledge that Henson ultimately allocated additional legal fees to Fannan's case beyond the fees covered by the April 2004 settlement agreement.  Recher Aff. ¶ 26.  However, they argue this allocation should not be used to reduce the fee request because it is consistent with the approximately 20 percent discount for services that Plaintiffs' counsel

applied to both Fannan's portion of the case and the fee request presently before the Court.  Id. Given the common legal foundation of all of Plaintiffs' claims, the Court finds it appropriate to reduce the fee award to reflect a discount on the additional services allocated to Fannan's account.

Defendants also contend Plaintiffs should not be allowed to recover for time spent on: (1) their unsuccessful motion for summary judgment and (2) the FMLA claims dismissed by the Court when it partially granted Defendants' Motion for Summary Judgment.  Where a plaintiff brings "distinctly different claims for relief . . . based on different facts and legal theories . . . work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." Hensley, 461 U.S. at 434-35 (quotations and citations omitted). However, the Hensley court also recognized that some cases involve a common core of facts or are based on related legal theories. Id. at 435.  When the majority of counsel's time is devoted generally to the litigation as a whole, and it is difficult to divide the hours expended on a claim-by-claim basis, the Court guided district courts to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.

Plaintiffs moved for summary judgment on only their FMLA and MPLA claims.  This motion was denied.  The FMLA claim was ultimately dismissed on Defendants' motion. Plaintiffs' Title VII, MHRA and MPLA claims survived summary judgment.  All of these claims, including the FMLA claim, were based on the same common core of facts - namely the impact of the SPE system on female sales consultants who took maternity/parenting leave. Obtaining leave information for all sales consultants and creating a database to interpret the data was necessary for all of the claims.  Although Plaintiffs' partial summary judgment motion was denied, it was not a frivolous motion and Plaintiffs' counsel did not spend an unreasonable

amount of time preparing it. The Court finds it is appropriate to apply a moderate reduction to Plaintiffs' fee request due to the denial of their partial summary judgment motion and the dismissal of the FMLA claim.

Finally, Defendants argue a significant portion of Plaintiffs' billable hours are vague, duplicative or reflect tasks that could have been handled by fewer attorneys. Fees will not be awarded for unnecessary or excessive hours billed by Plaintiffs' counsel. See Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 772 (8th Cir. 2000). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. Many of Plaintiffs' billing entries contain imprecise descriptions such as "review documents," "study liability issues," "telephone conference with . . .," "prepare letter," "study settlement issues," "research," "legal research," and "review correspondence." Sprenkle Aff. [Docket No. 133] ¶ 4, Exs. 1-3. Such vague descriptions make it difficult to discern whether the billable hours were reasonable or duplicative and make a reduction in the fee request appropriate.

For the aforementioned reasons, the Court finds a 30 percent reduction in Plaintiffs' request for $565,295.50 in attorneys' fees is appropriate. As a result, Plaintiffs are entitled to $395,706.85 in reasonable attorneys' fees.

This award is consistent with other indicia of a fee award's reasonableness. First, the award is commensurate with fee awards in similar cases. Thorne v. Welk Investment, Inc., 197 F.3d 1205, 1213 (8th Cir. 1999). The Supreme Court has stated that a rule limiting attorneys' fees in civil rights cases to a proportion of the recovery would severely undermine Congress' purpose for enacting Title VII. See City of Riverside v. Rivera, 477 U.S. 561, 576 (1986)

9

(finding a fee award of $245,456 reasonable in a civil rights action where plaintiffs were awarded $33,000 in damages). The parties present a number of cases to help determine what are reasonable fees in the instant matter. However, none of these cases provide a good match for the multuple parties and complexities involved in the instant matter. See Kline v. City of Kansas City, Missouri, Fire Dept., 245 F.3d 707, 708-710 (8th Cir. 2001) (affirming award of $277,900 in attorneys' fees when one of six plaintiff was awarded $47,100 on Title VII claim); Mock v. South Dakota Bd. of Regents, 296 F.Supp.2d 1066-67 (D.S.D. 2003) (awarding $486,490 in attorneys' fees in Title VII litigation where two plaintiffs were awarded a total of $429,217); see also Ray v. Miller Meester Advertising, Inc., 664 N.W.2d 355 (Minn. App. 2003), aff'd, 684 N.W.2d 404 (Minn. 2004) (awarding attorneys' fees of $396,8553.90 in Title VII and MHRA case for individual plaintiff). Although the instant case did not go to trial, the Court is satisfied that, given the remaining Plaintiffs, the significant amount of their combined settlement ($600,000), Plaintiffs' role in changing the leave practice for other employees, the complexity of the SPE system, and other reasons previously discussed, an award of $395,706.85 is consistent with awards in similar Title VII cases.

Defendants' argument that such an award is disproportionate with their counsels' fees is rejected. Evidence of hours expended by opposing counsel is "not an immutable yardstick of reasonableness." Shaw v. AAA Engineering & Drafting, Inc., 213 F.3d 542-43 (10th Cir. 2000) (quotations and citations omitted). Defendants' primary counsel was located in another state with a different median local billing rate. Recher Aff. ¶ 37. Defendants were also familiar with the complex SPE system, reducing the hours necessary to understand and interpret its treatment of maternity/parenting leaves. In addition, Defendants' counsel began work on this matter approximately 15 months after Plaintiffs' counsel. Id. For these reasons, an "apples-to-oranges

comparison is not required by law and would not be advisable." Burks v. Siemens Energy & Automation, Inc., 215 F.3d 880, 884 (8th Cir. 2000).

Finally, nothing in Plaintiffs' contingency fee agreements prohibits the amount of the award. Recher Aff. ¶ 6, Exs. 3, 4. The agreements expressly provide that Plaintiffs' counsel receive the higher of a 40 percent contingency recovery or an award of attorneys' fees from the Court. Id.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees [Docket No. 121] is **GRANTED IN PART**. For the reasons set forth above, the Court awards Plaintiffs $395,706.85 in reasonable attorneys' fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 19, 2005.